# STATE OF MICHIGAN

# COURT OF APPEALS

BOOKER T. GAULDEN,

Plaintiff-Appellant,

v

MICHIGAN PUBLIC SCHOOL EMPLOYEES'
RETIREMENT SYSTEM BOARD and OFFICE
OF RETIREMENT SERVICES,

Defendants-Appellees.

UNPUBLISHED
April 26, 2018

No. 340849
Court of Claims
LC No. 17-000186-MK

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals the Court of Claims's order granting summary disposition in favor of the state defendants. Because the administrative record is insufficient, we remand this matter to the Office of Retirement Services (ORS) to develop further the administrative record.

## I. BACKGROUND

Plaintiff is a former public-school employee who retired on August 1, 2011. Upon retirement, plaintiff enrolled in a retiree-health plan through the Michigan Public School Employees' Retirement System (MPSERS), which provides eligible members with a monthly health insurance premium subsidy. Defendant ORS is a division of the Department of Technology, Management and Budget. ORS administers retirement programs for MPSERS, including the retiree-health plan in which plaintiff enrolled upon retirement.

Prior to retiring, plaintiff did the seemingly prudent thing—he checked with ORS to determine what his monthly pension payment would be if he retired effective August 1, 2011. In a letter dated June 28, 2011, ORS informed plaintiff that, "[b]ased on a retirement effective date of 08/01/2011," his monthly pension payment was estimated to be $266.33. ORS made clear, however, that "***The letter is for estimate purposes only***." ORS also informed plaintiff that he would qualify for a substantial subsidy on his health insurance; specifically, plaintiff would have to pay only $180.99/month for health insurance that would normally cost $1,215.66/month. The health insurance would cover both plaintiff and his wife.

ORS followed up with another letter dated July 8, 2011. The letter started, "Congratulations on your retirement! Processing of your retirement application has begun, using

-1-

only the wages and service reported to our office by your employer as of July 8, 2011." The letter once again noted that plaintiff's "Retirement effective date" was "08/01/2011" and, based on plaintiff's total service credit and retirement date, among other factors, plaintiff was eligible to receive subsidized health insurance for $180.99/month.

Plaintiff received his pension and health-insurance subsidy without problem from August 2011 to December 2012. Then, following an audit, ORS notified plaintiff in December 2012 that it had determined that plaintiff had not been originally eligible for the health-insurance subsidy because he purportedly did not meet the statutory criteria. ORS explained in a follow-up letter dated January 15, 2013:

> Dear Booker Gaulden:
>
> Thank you for contacting the Office of Retirement Services (ORS) in regards [sic] to the change in your insurance subsidy.
>
> To be considered an active member at the time of retirement for purposes of the insurance subsidy, you must earn either one-tenth (0.1) or more years of service in each of the five school fiscal years immediately before your retirement effective date, or at least one-half (0.5) years of service within the last two fiscal years immediately before your retirement effective date.
>
> When our office calculated your initial pension benefit, it did not include the fiscal year 2012, which started July 1, 2011. However, upon receiving the final pay details from your school, they reported wages were earned until July 26, 2011. This added service credit for you in the 2012 fiscal year; as a result your last five years of service credit are now as follows:
>
>> Fiscal Year 2012–0.0235 years of service
>> Fiscal Year 2011–0.3245 years of service
>> Fiscal Year 2010–0.3480 years of service
>> Fiscal Year 2009–0.2990 years of service
>> Fiscal Year 2008–0.2824 years of service
>
> Because you have not earned the minimum 0.1 in each of your last 5 years or at least 0.5, within the last two years, you do not meet the eligibility requirements for subsidized insurance. Therefore, you are now being charged the full premium for your insurance enrollment.
>
> I apologize for any inconvenience this may have caused. If you have any questions or concerns, please contact our office at 1-800-381-5111.
>
> Sincerely,
>
> Customer Service
> Office of Retirement Services.

It appears from this letter that had plaintiff retired by June 30, 2011 (and assuming he had at least 0.1 years of service in FY07), plaintiff would have been entitled to receive a full subsidy for his health insurance. Or, had plaintiff stayed on for a couple of months beyond August 1, 2011, he could have earned at least 0.1 years of service in FY12, thereby again qualifying him for the full subsidy. Instead, plaintiff retired on August 1, 2011 with the (apparently mistaken, though understandable) belief that he had sufficient years of service to qualify for the full subsidy.

After receiving the January 2013 letter from ORS, plaintiff responded and requested reinstatement of his subsidy, to no avail. Plaintiff subsequently received a letter from ORS in August 2013 indicating that he owed $14,077.02 to cover the cost of the past subsidies for which ORS asserted he did not qualify. Plaintiff requested an administrative hearing, and a hearing was noticed for March 13, 2014. The hearing was adjourned as plaintiff sought protection from creditors in bankruptcy.

ORS challenged plaintiff's bankruptcy petition. On the morning of his hearing on ORS's motion to dismiss, plaintiff informed the bankruptcy court that he was ill and would be unable to attend. His counsel agreed with ORS that the hearing could proceed. The bankruptcy court dismissed plaintiff's petition because of material inaccuracies that were not timely corrected. *In re Gaulden*, 522 BR 580, 592-593 (Bankr WD Mich, 2014).

Plaintiff's administrative proceedings resumed. An administrative law judge (ALJ) scheduled a hearing for February 10, 2015. Plaintiff requested an adjournment because he was ill and wanted additional time to obtain an attorney. The ALJ refused to adjourn the hearing, and on the date set for hearing, plaintiff withdrew his hearing request. The ALJ immediately dismissed the matter.

It appears that nothing else took place until March 2017, when ORS sent plaintiff another letter seeking payment for the outstanding $14,077.02. In response, plaintiff requested an administrative hearing. ORS denied his request, explaining that plaintiff's voluntary withdrawal and the subsequent dismissal of his hearing in February 2015 constituted a final adjudication.

Plaintiff then sued defendants in the Court of Claims. In his pleadings, plaintiff challenged ORS's decision to withdraw his subsidy for a variety of reasons. Defendants sought summary disposition under MCR 2.116(C)(4) and MCR 2.116(C)(7).

The Court of Claims granted defendants' motion for summary disposition. Before reaching the parties' respective arguments, the court observed "that plaintiff had no fault in the occurrence that led to this lawsuit." The court continued,

> Indeed, as he mentions in several of his pleadings, he applied for retirement on the good faith belief (according to him, based upon actual conversations with retirement personnel) that he was eligible for retirement and for the healthcare subsidy. Indeed, he received the healthcare subsidy for over a year until the state made a redetermination. The state, *rather than simply making the correction and moving forward*, made the decision to recover the monies it paid to plaintiff based on its own miscalculation. Hence, the equities favor plaintiff. (Emphasis added.)

The court held, however, that, despite the equities weighing in plaintiff's favor, because plaintiff had failed to exhaust his administrative remedies, the court was without subject-matter jurisdiction to hear plaintiff's claims.

Plaintiff appealed the Court of Claims's ruling. At oral argument before this Court, additional facts were revealed that do not appear to be well-documented in the record. Specifically, plaintiff revealed to this Court that the reason he requested an adjournment of his administrative hearing in February 2015 was because he was hospitalized following a stroke and would be moved from the hospital to a nursing home to continue his recovery. Moreover, defendant suggested that the statutory stay required by plaintiff's bankruptcy case may have played a large part in the ALJ's decision to deny defendant's motion for adjournment. Finally, the parties highlighted at oral argument that ORS waited approximately two more years before seeking to garnish plaintiff's pension for the outstanding $14,077.02.

## II. ANALYSIS

On appeal, this Court reviews de novo the Court of Claims's decision on a motion for summary disposition. *Papas v Gaming Control Bd*, 257 Mich App 647, 656; 669 NW2d 326 (2003). We agree with the Court of Claims that the equities weigh in plaintiff's favor, at least with regard to ORS's original miscalculation as well as its attempts to recover the subsidies paid as a result of that miscalculation. Simply put, had ORS provided plaintiff at the outset with accurate information about how his projected retirement date of August 1, 2011 would dramatically increase his cost for retiree-health insurance when compared to a date a few weeks earlier, it seems likely that plaintiff would have selected an earlier retirement date, e.g., June 30, 2011. Or, plaintiff could have planned to work a bit longer so that his FY12 service would qualify him for the subsidy. That ORS did not have plaintiff's July 2011 work information when it estimated his pension and healthcare payments is a slender reed upon which to lean. Plaintiff plainly told ORS that he intended to retire on August 1, 2011, and the division should have anticipated that plaintiff might work several weeks in July. Armed with misinformation from ORS, plaintiff retired on arguably the worst possible date for his future financial stability.

Still, the equities of this case are not before this Court, which must decide issues only which are within the limited jurisdiction afforded it. What is before this Court, however, is an insufficient factual record.

In a contested case, when the factual record created before the administrative tribunal is insufficient to address the plaintiff's claims, the prudent course of action is to remand the case to the administrative agency with instructions to "further develop the administrative record." *Hicks v Dep't of Commerce*, 220 Mich App 501, 510; 560 NW2d 54 (1996); see also MCL 24.305; MCR 7.216(A); *Mich Ass'n of Home Builders v Director of Dep't of Labor and Economic Growth*, 481 Mich 496, 500; 750 NW2d 593 (2008). Regarding plaintiff's motion to adjourn the administrative hearing, although it is noted in the record that plaintiff was suffering from heart and kidney problems at the time of the administrative hearing, the extent of those medical issues does not appear to be well-documented in the record. Importantly, if plaintiff's oral argument before this Court is accurate, then he was not only suffering from heart and kidney problems but was actually hospitalized following a stroke. If plaintiff was indeed hospitalized at the time of the hearing—especially if the hospitalization was from a debilitating event such as a stroke—

then any tribunal would be hard pressed to find that there was not good cause to delay the hearing. Moreover, while the ALJ's order does indicate that the ALJ concluded that plaintiff had not shown good cause to adjourn the hearing, the ALJ's order does not provide much explanation supporting that conclusion. At oral argument, this panel was given the impression that plaintiff's bankruptcy proceedings may have weighed heavily in the ALJ's decision. Given that the bankruptcy stay is statutorily mandated under federal law, 11 USC 362, if the bankruptcy stay did form the basis for the ALJ's decision, then that could be another ground for finding that the decision was arbitrary and capricious.

In addition to questions about plaintiff's illness and the stay involving the bankruptcy proceedings, defendant argues that plaintiff's appeal to the Court of Claims was time barred under MCL 24.304. While plaintiff's claim would be time barred if the February 2015 order denying his adjournment is considered a final decision, given defendant's post-order attempts to garnish plaintiff's wages—actions which are only cursorily developed in the record—we are unable to conclude on the current record whether plaintiff's appeal to the Court of Claims was time barred. Accordingly, we remand this matter to ORS for a hearing to develop the administrative record.

While the merits of this appeal are not before us given the insufficient factual record, we do note that ORS's apparent reading of the relevant statute seems to be a curious one. ORS determined that plaintiff did not qualify for the health-insurance subsidy because his year-of-service credit in FY12 was so low; recall that he worked for three weeks in July 2011 and FY12 began on July 1, 2011. MCL 380.1133. If plaintiff's FY12 service is not considered, then he would have qualified for the subsidy. Thus, the merits of plaintiff's claim center on whether or not his FY12 service—three weeks in July 2011—should be considered.

Entitlement to the subsidy is governed by MCL 38.1391. In relevant part, subsection (11) of that statute provides that a retiree does not qualify for the health-insurance subsidy "unless the member was employed and has received a minimum total of 1/2 of a year of service credit . . . during the 2 school fiscal years immediately preceding the member's retirement allowance effective date or the member has received a minimum of 1/10 of a year of service credit . . . during each of the 5 school fiscal years immediately preceding the member's retirement allowance effective date."

There is no statutory definition of "immediately preceding," nor could any controlling or persuasive caselaw be located. The phrase is not a legal term of art. Turning to an authoritative dictionary for guidance, see *Messenger v Consumer & Industry Servs*, 238 Mich App 524, 534; 606 NW2d 38 (1999), "immediately" means "Without any delay or lapse of time; instantly, directly, straightway; at once," *The Oxford English Dictionary* (2nd ed.) (1989). For its part, "preceding" is defined as "in time: Existing, occurring, or going on before something else; previous, prior, past, anterior, former, antecedent; *esp.* occurring just before, immediately anterior, 'last.' " *Id.* Given this, a reasonable interpretation of school fiscal years "immediately preceding" a member's retirement date would seem to be the school fiscal years prior to the one in which the member retires, without any gap between years. Under this reading, if a member retires in FY12, then the two school fiscal years "immediately preceding" the member's retirement would be FY10 and FY11. Had ORS interpreted subsection (11) in this fashion, it would appear that plaintiff may have been entitled to the subsidy.

Not only does this reading appear to be consistent with the plain meaning of the statute, it also avoids ascribing rather absurd intentions to the Legislature. Under ORS's reading, it seems mathematically impossible for an employee who has credit less than approximately 0.425 years of service in the next-to-last FY to retire in July (or possibly even August) and still earn the health-insurance subsidy. The employee would likely not have a total credit of at least 0.5 years of service during the preceding two FYs (e.g., 0.425 + 0.0235 (plaintiff's service credit for three weeks in July 2011) = 0.4485), nor would the employee have earned at least 0.1 service credit for the final year, because, as seen with plaintiff, a few weeks of work are insufficient to reach 0.1 years of service, at least for an employee who is classified as something less than full time.

If correct, this analysis would suggest that ORS has read the statute as intending either (i) for the wary public school employee, to avoid retiring in July or August, or (ii) for the unwary public school employee, to trap the employee into giving up a subsidy. Both intentions appear absurd—(i) public policy would seem to *favor* a public school employee retiring in summer when school is traditionally out, and (ii) statutes are to be read "as an ordinary citizen might, not to lay spring traps for the unwary." *El Encanto, Inc v Hatch Chile Company, Inc*, 825 F3d 1161, 1164 (CA 10, 2016). Maybe ORS has a compelling argument for its interpretation, even in the face of what seems to be a reasonable contrary reading. Given that this case never proceeded to a hearing and the issue has not been sufficiently briefed before this Court, however, we lack a record adequate to answer this question definitively.

Accordingly, we vacate the Court of Claims's judgment in favor of defendants and remand this matter for further development of the administrative record. Given the time and resources already expended, ORS may find it in the interests of fairness and administrative efficiency simply to address the merits of plaintiff's claim, rather than attempt to resuscitate a potentially flawed decision with regard to the February 2015 decision on plaintiff's request for extension.

We retain jurisdiction.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

# Court of Appeals, State of Michigan

# ORDER

Booker T Gaulden v Mich Pub School Employees Retirement System BD

Docket No.    340849

LC No.    17-000186-MK

William B. Murphy
Presiding Judge

Kathleen Jansen

Brock A. Swartzle
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED to the Office of Retirement Services (ORS) for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 35 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, ORS is to develop further the administrative record. It may also address the merits of plaintiff-appellant's claim consistent with this Court's opinion.

The parties shall promptly file with this Court a copy of all papers filed on remand. The Office of Retirement Services shall complete the proceedings within 63 days after the issuance of this order. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

/s/ William B. Murphy

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 26, 2018
Date

Chief Clerk