683 N.W.2d 200 (2004)
261 Mich.App. 534
Mary KRAFT, Plaintiff-Appellant,
v.
DETROIT ENTERTAINMENT, L.L.C., d/b/a Motor City Casino, Greektown Casino, L.L.C., d/b/a Greektown Casino, and MGM Grand Detroit, L.L.C., d/b/a MGM Grand Detroit Casino, Defendants-Appellees, and
International Game Technology, Inc., and Anchor Gaming, Inc., Defendants, and
IGT and Anchor Coin, Intervening Defendants-Appellees.
Docket No. 241405.
Court of Appeals of Michigan.
Submitted November 5, 2003, at Detroit.
Decided April 13, 2004, at 9:00 a.m.
Released for Publication June 24, 2004.
*202 Wasinger Kickham & Hanley (by Stephen Wasinger and Gregory D. Hanley) and Mantese Miller & Shea, PLLC (by E. Powell Miller), Royal Oak, Troy, for the plaintiff.
Dickinson Wright PLLC (by Lawrence G. Campbell, Kathleen A. Lang, and L. Pahl Zinn), Detroit, for the defendants.
Barris, Sott, Denn & Driker, PLLC (by Eugene Driker, Morley Witus, and Matthew Millikin), Detroit, for intervening defendants.
Before: WHITBECK, C.J., and ZAHRA and DONOFRIO, JJ.
ZAHRA, J.
Plaintiff appeals as of right from an order summarily dismissing her lawsuit. We must determine whether plaintiff may pursue a claim under the Michigan Consumer Protection Act (MCPA), MCL 445.901 et seq., or common-law claims of fraud and unjust enrichment against defendants IGT and Anchor Coin, the manufacturer and designer of two slot machines used in Detroit casinos. Plaintiff maintains that these slot machines are deceptive because they misrepresent the chances of winning a large payoff. Defendants deny that the slot machines are deceptive, but argue that, even if they are, plaintiff's claims must fail as a matter of law. We conclude that the trial court properly dismissed plaintiff's claims. The MCPA expressly exempts from its reach "[a] transaction or conduct specifically authorized under laws administered by a regulatory board ... acting under statutory authority of this state...." MCL 445.904(1)(a). Because the operation of these slot machines is specifically authorized by the Michigan Gaming Control Board (MGCB), defendants are exempt from plaintiff's MCPA claims. The trial court also properly dismissed plaintiff's common-law claims. These claims are "preempted"[1] by § 3 of the Michigan Gaming Control and Revenue Act (MGCRA), MCL 432.201 et seq. We affirm.

I. Facts and Procedure
Detroit Entertainment, L.L.C.; Greektown Casino, L.L.C.; and MGM Grand Detroit, L.L.C., (collectively the casino defendants) offer at their casinos two slot machines identified as "Wheel of Fortune" and "I Dream of Jeannie." These slot machines operate like traditional three-reel slot machines, but also feature a "bonus wheel" that activates when a certain combination is displayed on the slot machine reels. The bonus wheel consists of twenty-two equally proportioned pie-shaped pieces and looks like the wheel utilized on the popular television game show "Wheel of Fortune." Each pie-shaped section has a number between twenty and one thousand that represents the number of coins the player wins when the wheel stops on that number. A computer program within the machine determines where the bonus wheel will stop when it is activated. The chances of stopping on one of the higher payoff numbers is significantly smaller than the chances of stopping on one of the lower pay off numbers.[2] Anchor Coin's patent for these slot machines states that the bonus wheel can provide players "a realistic sense of a totally mechanical indicator," but that the *203 internal computer program will "randomly select the winning payout according to a predetermined frequency of occurrence for each individual bonus payout, and then cause the bonus indicator to stop at the desired area."
Plaintiff filed a class-action lawsuit[3] against the casino defendants; International Game Technology, Inc.; and Anchor Gaming, Inc.,[4] alleging that defendants violated the MCPA and fraudulently induced consumers to play or continue to play the slot machines, while unjustly enriching themselves, by failing to disclose that the bonus wheels on the "Wheel of Fortune" and "I Dream of Jeannie" slot machines were programmed to stop much more frequently on spaces with lower monetary payoffs.
The casino defendants moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing that they were exempt from plaintiff's MCPA claims, because the MCPA does not apply to transactions or conduct specifically authorized under laws administered by the MGCB, which is a state-authorized regulatory body. The casino defendants argued that the MGCB approved the slot machines, thus triggering the MCPA's exemption. The casino defendants also argued that plaintiff could not state a claim for silent fraud, misrepresentation, or unjust enrichment, because she did not establish that the casino defendants owed her a duty to disclose information concerning the specifications of the operation of the slot machines. IGT and Anchor Coin (collectively the manufacturer defendants) also moved for summary disposition, joining in the casino defendants' argument that they were exempt from plaintiff's MCPA claims. The manufacturer defendants also argued that the MGCRA preempts all statutory and common-law claims concerning casino gaming devices once the devices are approved by the MGCB. The trial court granted defendants' motions for summary disposition, and plaintiff appeals as of right.

II. Analysis

A. Standard of Review
Defendants filed their motions for summary disposition under MCR 2.116(C)(8) and (C)(10). We review de novo a trial court's resolution of a motion for summary disposition. Veenstra v. Washtenaw Country Club, 466 Mich. 155, 159, 645 N.W.2d 643 (2002). The trial court did not specify under which subrule it granted defendants' motions for summary disposition. However, with respect to the claim under the MCPA, the trial court relied on facts outside the pleadings to establish that the MGCB approved the use of the slot machines at issue in this case. Therefore, we treat dismissal of the MCPA claim as having been granted under MCR 2.116(C)(10). Velmer v. Baraga Area Schools, 430 Mich. 385, 389, 424 N.W.2d 770 (1988).
A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. Veenstra, supra at 163, 645 N.W.2d 643. The trial court must consider affidavits, pleadings, depositions, admissions, and any other evidence submitted by the parties in a light most favorable to the nonmoving party. Id. at 164, 645 N.W.2d 643. Summary disposition should be granted if there is no genuine issue of any material fact and the moving party is entitled to judgment or *204 partial judgment as a matter of law. MCR 2.116(C)(10), (G)(4); Veenstra, supra at 164, 645 N.W.2d 643.
Dismissal of plaintiff's common-law claims was premised exclusively on the pleadings. Accepting all the well-pleaded allegations of plaintiff's complaint as true, the manufacturer defendants argued, and the trial court ruled, that plaintiff's claims were barred as a matter of law under the preemption provision of the MGCRA. Thus, dismissal of plaintiff's common-law claims was pursuant to MCR 2.116(C)(8). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. Beaudrie v. Henderson, 465 Mich. 124, 129, 631 N.W.2d 308 (2001). Summary disposition should be granted if the plaintiff has failed to state a claim on which relief can be granted and no factual development could possibly justify recovery. Id. at 130, 631 N.W.2d 308.
Our review of this matter also requires us to interpret and apply the MCPA and the MGCRA. Questions of statutory interpretation are also subject to review de novo. Eggleston v. Bio-Medical Applications of Detroit, Inc., 468 Mich. 29, 32, 658 N.W.2d 139 (2003).

B. Defendants Are Exempt From Plaintiff's MCPA Claims
The MCPA expressly provides that it does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board ... acting under statutory authority of this state...." MCL 445.904(1)(a). Plaintiff argues that this exemption does not apply in this case because she is challenging defendants' advertising and promotion of the slot machines at issue, which is conduct that is not specifically authorized by the MGCB.
In Smith v. Globe Life Ins. Co., 460 Mich. 446, 597 N.W.2d 28 (1999), our Supreme Court interpreted the phrase "specifically authorized" as used in MCL 445.904(1)(a). Smith involved a dispute regarding the defendant insurer's avoidance of a credit life and disability insurance policy on the ground that the insured misrepresented the state of his health on the insurance application. Id. at 448-449, 597 N.W.2d 28. The plaintiff filed a complaint alleging violations of the MCPA, which was dismissed by the trial court. Id. at 451-453, 597 N.W.2d 28. On appeal to the Supreme Court, the defendant argued that the sale of credit life insurance was "specifically authorized" by law under MCL 445.904(1)(a) and therefore exempt from the plaintiff's claim of MCPA violations, because the defendant's application and certificate of insurance forms were submitted to and approved by the State Commissioner of Insurance. Id. at 462-463, 597 N.W.2d 28. The plaintiff responded that MCL 445.904(1)(a) does not specifically authorize fraudulent insurance practices. Id. at 463, 597 N.W.2d 28. The Supreme Court concluded that in determining whether a transaction or conduct is "specifically authorized" by law, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is `specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." Id. at 465, 597 N.W.2d 28.
Applying the legal standard established in Smith, supra at 465, 597 N.W.2d 28, we conclude that the general conduct involved in this case  the operation of slot machines  is regulated and was specifically authorized by the MGCB. The MGCRA gives the MGCB the authority to adopt standards for licensing electronic gambling devices. MCL 432.204a(1)(e). The approval process established by the MGCB for electronic and mechanical gaming devices *205 is set forth in 1999 AC, R 432.1839. Pursuant to this rule, the MGCB puts gaming devices through rigorous randomness testing and ensures that the rules of the game are clearly displayed and are not confusing or misleading. Using the procedures and standards set forth in Rule 432.1839, the MGCB specifically authorized defendants to operate the slot machines at issue in this case. Whether the specific misconduct alleged  defendants' misrepresentation of the chances of winning a large payoff on the "bonus wheel"  is illegal or prohibited by the MGCB is irrelevant to the determination whether the transaction or conduct was specifically authorized by the MGCB. Smith, supra at 465, 597 N.W.2d 28. Therefore, MCL 445.904(1)(a) applies in this case and defendants are exempt from plaintiff's MCPA claims.
We are not persuaded that Baker v. Arbor Drugs, Inc., 215 Mich.App. 198, 207, 544 N.W.2d 727 (1996), requires us to reach a different conclusion. In Baker, the defendant pharmacy advertised that its computer system would prevent adverse drug interactions. The decedent, who had his prescriptions filled by the defendant pharmacy, had a stroke because of an adverse drug interaction. Id. at 200-201, 544 N.W.2d 727. The plaintiff sued, alleging, among other things, that the defendant's representation that its computer system prevented adverse drug interactions violated the MCPA. Id. at 206-207, 544 N.W.2d 727. The defendant argued that MCL 445.904(1)(a) exempted it from a claim under the MCPA, because pharmacies are regulated by the Michigan Board of Pharmacy. This Court held that the defendant was not exempt from the MCPA, because regulation of advertising was not within the purview of the Pharmacy Board's powers. Id. at 208, 544 N.W.2d 727. In Baker, supra at 207, 544 N.W.2d 727, the defendant expressly represented to the public that its computer system would prevent adverse drug interactions. In the present case, by contrast, defendants did not expressly represent to the public or anybody else that there was a one in twenty-two chance of landing on any one of the twenty-two bonus wheel payouts, including the one-thousand-coin payout. Plaintiff alleges that the actual appearance and operation of the slot machines mislead players. Because the MGCB regulates the operation of the slot machines and also determines whether the machines are misleading, defendant's operation of the slot machines at issue in this case was specifically authorized by the MGCB.

C. Plaintiff's Common-Law Claims are "Preempted" by the MGCRA
Plaintiff also argues that the trial court erred in concluding that her common-law claims are preempted by the MGCRA. Plaintiff argues that the preemption doctrine only applies when a law enacted by a superior authority precludes a law enacted by an inferior authority. Plaintiff maintains that the preemption doctrine does not apply to this case because state statutes cannot preempt common-law causes of action. We agree with plaintiff that the preemption doctrine is traditionally applied when a federal law takes precedence over a state law. Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); see also, e.g., Abela v. Gen. Motors Corp., 257 Mich.App. 513, 525, 669 N.W.2d 271 (2003), aff'd 469 Mich. 603, 677 N.W.2d 325 (2004) (holding that because the Federal Arbitration Act, 9 USC 1 et seq., preempts Michigan's lemon law, MCL 257.1401 et seq., the plaintiffs' lemon law claim should have been resolved through binding arbitration); Martinez v. Ford Motor Co., 224 Mich.App. 247, 568 N.W.2d 396 (1997) (holding that the plaintiff's *206 state common-law tort claims were preempted by the National Motor Vehicle Safety Act, 15 USC 1381 et seq.). However, notwithstanding traditional notions of preemption, our Supreme Court has recognized that common-law claims may also be "preempted" by a state statute. See Jackson v. PKM Corp., 430 Mich. 262, 279, 422 N.W.2d 657 (1988) (holding that "the dramshop act [MCL 436.22] ... afford[s] the exclusive remedy for injuries arising out of an unlawful sale, giving away, or furnishing of intoxicants thereby preempting all common-law actions arising out of these circumstances"); Millross v. Plum Hollow Golf Club, 429 Mich. 178, 181, 413 N.W.2d 17 (1987) (holding that " plaintiff's negligence claim which arose out of the selling, giving, or furnishing of alcoholic liquor by a liquor licensee is preempted by the exclusive remedy of the dramshop act"). Because our Supreme Court has in certain instances identified the legislative abrogation of common law as a type of "preemption" that differs from the traditional application of the preemption doctrine, we reject plaintiff's argument that a state statute cannot "preempt" common-law claims.[5]
Plaintiff also argues that to the extent a state statute can preempt the common law, the common-law claims she is asserting in this case are not inconsistent with the MGCRA, do not conflict with decisions made by the MGCB, and address conduct that was not evaluated by the MGCB. Therefore, plaintiff concludes, the MGCRA does not preempt her claims of fraud and unjust enrichment.
Whether or not a statutory scheme preempts the common law on a subject is a matter of legislative intent. Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).... In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. 2A Sands, Sutherland Statutory Construction (4th ed.), § 50.05, pp. 440-441. [Millross, supra at 183, 413 N.W.2d 17.]
Thus, we must examine the relevant language of the MGCRA. In Papas v. Gaming Control Bd., 257 Mich.App. 647, 658, 669 N.W.2d 326 (2003), this Court set forth the principles of statutory construction:
In interpreting the act, we must ascertain and give effect to the intent of *207 the Legislature. In re MCI Telecom. Complaint, 460 Mich. 396, 411, 596 N.W.2d 164 (1999); Frankenmuth Mut. Ins. Co. v. Marlette Homes, 456 Mich. 511, 515, 573 N.W.2d 611 (1998). To determine the intent of the Legislature, we must first review the language of the statute itself. House Speaker v. State Admin. Bd., 441 Mich. 547, 567, 495 N.W.2d 539 (1993). If the statute is unambiguous on its face, the Legislature is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted. Lorencz v. Ford Motor Co., 439 Mich. 370, 376, 483 N.W.2d 844 (1992).
"Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." Sun Valley Foods Co. v. Ward, 460 Mich. 230, 236, 596 N.W.2d 119 (1999). An ambiguity of statutory language does not exist merely because a reviewing court questions whether the Legislature intended the consequences of the language under review. An ambiguity can be found only where the language of a statute, as used in its particular context, has more than one common and accepted meaning. Frame v. Nehls, 452 Mich. 171, 176, 550 N.W.2d 739 (1996). Thus, where common words used in their ordinary fashion lead to a single reasonable interpretation, the statute is not ambiguous.
The MGCRA includes the following provision: "Any other law that is inconsistent with this act does not apply to casino gaming as provided for by this act." MCL 432.203(3). The Legislature's use of the phrase "[a]ny other law" implies that the preemption clause is all-inclusive when referring to the laws it was meant to encompass. That the phrase "[a]ny other law" sweeps broadly suggests that the Legislature meant to include common law in addition to legislative enactments.[6]
Having concluded that MCL 432.203(3) precludes inconsistent common-law actions, we must next determine whether recognizing plaintiff's actions for fraud and unjust enrichment based on defendants' failure to disclose the odds of winning a large payoff on the "bonus wheel" would be " inconsistent" with the act. Plaintiff argues that the common-law causes of action asserted in this case would not be inconsistent with the MGCRA. Plaintiff claims that the MGCRA and its accompanying administrative rules do not regulate the specific aspects of the slot machines that she claims are deceptive  the appearance of the slot machines. Plaintiff relies on several cases decided under the Federal Communications Act, 47 USC 151 et seq., to argue that, where a plaintiff's claims do *208 not challenge conduct that was specifically approved in the context of the regulatory process, but rather challenge aspects of the defendant's conduct that are extraneous to the regulatory process, those claims are not preempted. Spielholz v. The Superior Court of Los Angeles Co., 86 Cal.App.4th 1366, 104 Cal.Rptr.2d 197 (2001), Tenore v. AT & T Wireless Services, 136 Wash.2d 322, 962 P.2d 104 (1998), Cellular Dynamics, Inc v. MCI Telecom Corp, unpublished memorandum opinion of the United States District Court, Northern District of Illinois, issued April 12, 1995, 1995 WL 221758 (Docket No. 94 C 3126), and In re Long Distance Telecom. Litigation, 831 F.2d 627 (C.A.6, 1987).
These cases are distinguishable from the present case, because the Federal Communications Act contains a saving clause, which provides, "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." 47 USC 414. These cases held that the saving clause in the Federal Communications Act demonstrated that Congress intended to allow state court claims for breaches of independent duties that neither conflict with the specific provisions of the act nor interfere with its regulatory scheme. See Cellular Dynamics, Inc, supra, slip op. at 3. The MGCRA contains no such saving clause, but instead specifically provides that any other law that is inconsistent with the act is not applicable to casino gaming. MCL 432.203(3).
Plaintiff also relies on Walker v. Johnson & Johnson Vision Products, Inc., 217 Mich.App. 705, 552 N.W.2d 679 (1996). In Walker, supra at 707-708, 552 N.W.2d 679, the plaintiff brought negligence and breach of warranty claims against the defendant for eye injuries suffered while using contact lenses manufactured by the defendant. This Court determined that the plaintiff's claims were not preempted by the Medical Device Amendments of 1976(MDA), 21 USC 360c et seq., which preempted state law that was "different from, or in addition to" the requirements of the MDA, 21 USC 360k(a). Id. at 709, 712-713, 552 N.W.2d 679. Walker is distinguishable from the present case. The MDA contained provisions that evidenced the intent of Congress not to preempt state common-law claims. Walker, supra at 716, 552 N.W.2d 679. By contrast, the MGCRA does not include a provision showing its intent to maintain common-law claims related to the operation of gambling machines. Moreover, in Walker supra at 713, 552 N.W.2d 679, this Court noted that the Food and Drug Administration (FDA), through its regulations, interpreted the preemption clause of the MDA to be inapplicable to state requirements of general applicability, which this Court determined to include state common-law claims. By contrast, there is no MGCB regulation indicating that the "preemption" provision in the MGCRA does not apply to common-law claims regarding the fraudulent operation of slot machines.
The MGCRA provides the MGCB with expansive and exclusive authority to regulate all aspects of casino gambling in Michigan.[7] The MGCB has the duty to, *209 among other things, review casino license applications, promulgate rules and regulations to implement and enforce the act, provide for the levy and collection of penalties and fines for violation of the act or administrative rules, and receive complaints from the public and conduct investigations into the conduct of gambling operations to assure compliance with the act and to protect the integrity of casino gaming. MCL 432.204(17). Licensees are obligated to obtain the MGCB's approval of the rules of the game in question, and the MGCB may only approve a game if the rules of the game "ensure that the game will be played with integrity," and the rules fulfill "[o]ther requirements necessary to protect the public and ensure public confidence in gaming." 1999 AC, R 432.1806(3)(d). With respect to gaming equipment, which includes electronic gaming devices such as slot machines, if the MGCB determines that the equipment is "not adequate to ensure compliance with the act and these rules or the integrity of the game," the board may order the casino licensee's compliance. 1999 AC, R 432.1810(2). The MGCB rules also set forth the procedure for a patron to file a complaint against a casino licensee.[8] 1999 AC, R 432.XXXXX-XXX.11503. The MGCB may revoke casino licenses and impose fines for fraudulent conduct. MCL 432.204a(1)(m). In furtherance of protecting the public and ensuring public confidence in gaming, the MGCB has the power and duty to prevent manufacturers from producing, and casinos from using, casino games that are deceitful or misleading to casino patrons. Once the MGCB has inspected and approved a casino game, the manufacturers and casinos should be able to rely on the MGCB's determination that the game was appropriate for the gaming public.
*210 Because the MGCB monitors casino games to ensure integrity and, thus, to prevent fraud and deceit, we conclude that plaintiff's common-law claims are inconsistent with the MGCRA under MCL 432.203(3) and are thus inapplicable against defendants. We agree with defendants and the trial court that recognizing the common-law claims alleged by plaintiff would prohibit, through common-law duties to disclose in the context of fraud or unjust enrichment, that which was permitted by the MGCB under the MGCRA. Imposition of liability under those circumstances would give rise to conflicting standards for gaming device manufacturers and casino licensees because a casino licensee could use a gaming device that had been vigorously tested and approved by the MGCB, only to have a different standard imposed through the medium of the common law.

III. Conclusion
Plaintiff may not pursue a claim under the MCPA, because MCL 445.904(1)(a) specifically provides the MCPA does not apply to conduct specifically authorized by a regulatory board. Here, the conduct of operating slot machines and the question whether a slot machine is misleading in appearance are governed by the MGCB. Plaintiff's common-law claims of fraud and unjust enrichment are precluded by MCL 432.203(3), because pursuit of such claims is inconsistent with the MGCRA.
Affirmed.[9]
NOTES
[1] See our discussion of the term "preemption" in Part II(C) of this opinion.
[2] The MGCB confirmed the following odds: (1) the fifty-coin space would be landed on 18 out of 256 spins, (2) the two-hundred-coin space would be landed on 5 out of 256 spins, (3) the five-hundred-coin space would be landed on 3 out of 256 spins, and (4) the one-thousand-coin space would be landed on 1 out of 256 spins.
[3] Because the trial court granted defendants' motions for summary disposition, plaintiff never moved to certify the class.
[4] Plaintiff later voluntarily dismissed her claims against International Game Technology, Inc.; and Anchor Gaming, Inc.; and their subsidiary companies, IGT and Anchor Coin, intervened in the case.
[5] The term "preemption" may be something of a misnomer when referring to a situation where a state statute precludes application of common-law claims. The Legislature is presumed to be aware of common law that legislation will affect. Bennett v. Weitz, 220 Mich.App. 295, 299, 559 N.W.2d 354 (1996). It is a well-established legal principle that the Legislature may abrogate the common law. O'Brien v. Hazelet & Erdal, 410 Mich. 1, 15, 299 N.W.2d 336 (1980), citing Bean v. McFarland, 280 Mich. 19, 273 N.W. 332 (1937); Bradley v. Saranac Bd. of Ed., 455 Mich. 285, 301, 565 N.W.2d 650 (1997). In other words, if a statute provides for an exclusive remedy or otherwise limits or bars application of other laws, including the common law, any conflicting common law simply cannot apply. It is the function of the Legislature, not the judiciary, to make laws, and legislatively enacted laws will always take precedence over judge-made common law. O'Brien, supra at 15, 299 N.W.2d 336, citing Bean, supra. There is no need to apply traditional notions of preemption to reach this result. However, because our Supreme Court has used the terms "preempt" and "preemption" to generically describe what occurs when a legislative enactment precludes application of common law, see, e.g., Jackson, supra at 279, 422 N.W.2d 657; Millross, supra at 183, 413 N.W.2d 17, we too use this term to describe preclusion of plaintiff's common-law claims in the present case.
[6] In Ryan v. Brunswick Corp., 454 Mich. 20, 30-34, 557 N.W.2d 541 (1997), our Supreme Court held that the phrase "a law or regulation" in the preemption provision of the Federal Boat Safety Act, 46 USC 4306, included common-law causes of action. However, in a unanimous decision, the United States Supreme Court abrogated this ruling, holding that the phrase "a law or regulation" did not include common law because: (1) the article "a" before "law or regulation" implies discreteness that is not present in common law, and (2) the terms "law" and "regulation" together indicate that Congress intended to preempt only positive enactments. Sprietsma v. Mercury Marine, 537 U.S. 51, 63-64, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). ("If `law' were read broadly so as to include the common law, it might also be interpreted to include regulations, which would render the express reference to `regulation' in the pre-emption clause superfluous."). In contrast to the Federal Boat Safety Act, the Michigan Legislature used the broad phrase "any other law" in the MGCRA. Therefore, our disposition in the present case is consistent with the conclusion reached by the United States Supreme Court in Sprietsma, supra at 63-64, 123 S.Ct. 518.
[7] MCL 432.204a(1) provides for the jurisdiction and supervisory authority of the MGCB:

The board shall have jurisdiction over and shall supervise all gambling operations governed by this act. The board shall have all powers necessary and proper to fully and effectively execute this act, including, but not limited to, the authority to do all of the following:
* * *
(d) Investigate alleged violations of this act or rules promulgated by the board and to take appropriate disciplinary action against a licensee or any other person or holder of an occupational license for a violation, or institute appropriate legal action for enforcement, or both.
(e) Adopt standards for the licensing of all persons under this act, as well as for electronic or mechanical gambling games or gambling games, and to establish fees for the licenses.
* * *
(m) Suspend, revoke, or restrict licenses and require the removal of a licensee or an employee of a licensee for a violation of this act or a rule promulgated by the board or for engaging in a fraudulent practice, and impose civil penalties of up to $5,000.00 against individuals and up to $10,000.00 or an amount equal to the daily gross receipts, whichever is greater, against casino licensees for each violation of this act, any rules promulgated by the board, any order of the board, or for any other action which the board determines is a detriment or impediment to casino gambling operations.
* * *
(o) In addition to the authority provided under subdivision (m), revoke or suspend a casino license or impose any other disciplinary action for any of the following reasons:
* * *
(iii) The failure to revoke or suspend the license would undermine the public's confidence in the Michigan gaming industry. [Emphasis added.]
Under these statutory provisions, the MGCB has the broad authority to regulate casino games. The MGCB also has the express power to revoke licenses and impose monetary penalties on a casino for engaging in a fraudulent practice.
[8] Rule 432.11501(2) provides that "[p]atron disputes shall be settled in compliance with this part." Under Rule 432.11502(1), a casino licensee "shall attempt to resolve all patron disputes and shall have a period of 10 business days to investigate a patron complaint and resolve the dispute." If the attempt at resolution is unsuccessful, "the casino licensee shall advise the patron of the patron's right to file a complaint form with the board." Rule 432.11502(2). The Board then has the power to discipline the casino licensee for violations of the MGCRA or the administrative rule governing dispute procedures. Rule 432.11503.
[9] In light of our disposition above, we need not address plaintiff's other issue on appeal.