*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONIQUE JEWELL,

      Plaintiff-Appellee,

v

MGM GRAND DETROIT, LLC,

      Defendant-Appellant.

FOR PUBLICATION
March 25, 2026
11:12 AM

No. 363788
Wayne Circuit Court
LC No. 21-012872-AV

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

ON REMAND

GADOLA, C.J.

This appeal returns to this Court on remand from our Supreme Court for reconsideration in light of that Court's decision in *Davis v BetMGM, LLC*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166281). Upon reconsideration of this case in light of *Davis*, we affirm.

## I. FACTS

This case involves the claim of plaintiff, Monique Jewell, alleging unjust enrichment and fraudulent misrepresentation against defendant, MGM Grand Detroit, LLC. When this case previously was before this Court, we summarized the largely undisputed facts of this case as follows:

> On October 20, 2017 and October 21, 2017, plaintiff gambled at defendant's casino in Detroit after entering the casino with proper identification. During that time, she placed bets at various tables and machines and lost money to the casino. Eventually, plaintiff won a jackpot of approximately $17,000 while playing "Texas Hold'em." When she attempted to claim her winnings, however, defendant informed plaintiff that she had been banned from the casino since 2011, that she therefore was trespassing in the casino, and that as a result she was prohibited from claiming her winnings.

-1-

On October 24, 2017, plaintiff submitted a Patron Dispute Form to the Michigan Gaming Control Board (the Board). Plaintiff asserted that defendant did not inform her that she was banned from the casino before October 21, 2017, that defendant allowed her to enter the casino and gamble on October 20-21, 2017, as long as she was losing money to the casino, and that defendant claimed she was trespassing only after she won the jackpot. In response to her dispute form, Board Regulation Officer Robert Gambrell, by letter dated December 11, 2017, informed plaintiff:

> A "Patron complaint" means a complaint a patron has regarding winnings and losses or the conduct of gambling at a casino, R 432.1106(b). The matters you describe are not subject to regulation under the Michigan Gaming Control & Revenue Act or the Administrative Rules promulgated pursuant thereto. This means that irrespective of the validity of your complaint, the matters you raise are beyond the powers of the Board to address. . . . The Board has no authority to award any money or other relief directly to a patron.

Plaintiff thereafter initiated this action against defendant by filing a complaint in the district court alleging unjust enrichment and fraudulent misrepresentation. Defendant moved for summary disposition under MCR 2.116(C)(4), asserting that the district court lacked subject matter jurisdiction over the dispute, which defendant argued fell within the exclusive jurisdiction of the Michigan Gaming Control Board. The district court denied defendant's motion, holding that it had exclusive jurisdiction of the dispute alleged in the complaint under MCL 600.8301(1), in light of the Board's determination that it did not have jurisdiction.

> Defendant sought leave to appeal in the circuit court, challenging the district court's order. Defendant again argued that the district court lacked jurisdiction over whether plaintiff was entitled to collect winnings from the casino, which defendant argued fell within the exclusive jurisdiction of the Board. The circuit court denied defendant's application, reasoning that the dispute presented by plaintiff's complaint was not whether she won the $17,000 but whether the casino was justified in determining that she was a trespasser. This Court granted defendant's application for leave to appeal the order of the circuit court. [*Jewell v MGM Grand Detroit, LLC*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2024 (Docket No. 363788), p 1-2, vacated ___ Mich ___; 26 NW3d 832 (2025).]

This Court vacated the circuit court's order and remanded to the circuit court, directing the circuit court to reverse the order of the district court. In doing so, this Court followed the authority

established by previous decisions of this Court[1] that a plaintiff's common law tort claims are "preempted by the [Michigan Gaming Control Revenue Act's] grant of exclusive jurisdiction to the Board regarding patron disputes." *Id*. at 5. Plaintiff sought leave to appeal this Court's judgment to the Michigan Supreme Court, which held plaintiff's application in abeyance pending that Court's decision in *Davis*. After deciding *Davis* on July 22, 2025, our Supreme Court again considered plaintiff's application in this case and, in lieu of granting leave to appeal, vacated this Court's judgment and remanded this case to this Court for reconsideration in light of *Davis*.

## II. DISCUSSION

Defendant contends that the circuit court erred by denying its application for leave to appeal the order of the district court, arguing that the district court erred by denying defendant's motion for summary disposition of plaintiff's complaint under MCR 2.116(C)(4). Defendant argues that the district court lacked subject matter jurisdiction to adjudicate plaintiff's claim, which defendant asserts falls within the exclusive jurisdiction of the Michigan Gaming Control Board (the Board). Upon reconsideration in light of our Supreme Court's decision in *Davis*, we disagree with defendant's contention.

We review de novo the circuit court's review of a district court's order. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). We also review de novo a trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). Similarly, we review de novo the interpretation of statutes and legal doctrines, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), and whether a court has subject matter jurisdiction, *Reynolds v Robert Hasbany MD PLLC*, 323 Mich App 426, 431; 917 NW2d 715 (2018).

When this case was before this Court previously, we discussed the relevant Michigan authority existing at that time and its application in this case as follows:

> Subject matter jurisdiction describes a court's "abstract power to determine a case of a particular kind or character." *Zelasko v Charter Twp of Bloomfield*, [347 Mich App 141, 155; 14 NW3d 441 (2023)]. When a trial court lacks subject matter jurisdiction, summary disposition is warranted under MCR 2.116(C)(4). *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). Summary disposition under MCR 2.116(C)(4) also is proper when a plaintiff fails to exhaust administrative remedies. See *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000) [abrogated by *Warren Consol Sch Dist v Sch Dist of City of Hazel Park*, ___ Mich ___ (2026) (Docket No. 167643].

---

[1] Under MCR 7.215(J)(1), this Court must follow a rule of law established by a published decision of this Court issued on or after November 1, 1990, unless the rule of law is modified or reversed by our Supreme Court or a special panel of this Court. *Johnson v Johnson*, ___ Mich App ___, ___; NW3d ___ (2025) (Docket No. 370181); slip op at 10.

In Michigan, "[t]he district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). However, in Michigan, legalized gambling is controlled by statute. See *Taxpayers of Mich Against Casinos v Michigan*, 478 Mich 99, 121; 732 NW2d 487 (2007) (MARKMAN, J., dissenting). Relevant to this case, the Michigan Gaming Control and Revenue Act (MGCRA), MCL 432.201 *et seq*., regulates casino gambling in Detroit. *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 28; 811 NW2d 98 (2011). The MGCRA established the Michigan Gaming Control Board, MCL 432.204a, and provides for the Board's jurisdiction as follows:

> (1) The board has jurisdiction over and shall supervise all gambling operations governed by this act. The board has all powers necessary and proper to fully and effectively execute this act, including, but not limited to, the authority to do all of the following:
>
> * * *
>
> (b) Have jurisdiction over and supervise casino gambling operations authorized by this act and all persons in casinos where gambling operations are conducted under this act.
>
> * * *
>
> (d) Investigate alleged violations of this act or rules promulgated by the board and to take appropriate disciplinary action against a licensee or any other person, or institute appropriate legal action for enforcement, or both. [MCL 432.204a.]

The MGCRA and the rules issued by the Board "apply to all persons who are licensed or otherwise participate in gaming under this act." MCL 432.203(4). The Michigan Administrative Code provides rules applicable to the Board and includes dispute procedures. A patron dispute is defined by Mich Admin Code, R 432.1106(b) as "a dispute a patron has regarding winnings or losses or the conduct of gambling at a casino." Mich Admin Code, R 432.11502 provides for a patron to file a patron dispute form with the Board, which then determines whether the dispute requires investigation. Mich Admin Code, R 432.11503 provides:

> (1) Following receipt of a completed patron dispute form, the board will determine if a patron dispute requires investigation.
>
> (2) The board may decline to investigate the patron dispute for the following reasons:
>
> (a) The patron dispute form was not received within 28 days from the incident date.
>
> (b) The incident does not involve winnings or losses.

-4-

(c) The incident does not involve the conduct of gambling.

(d) Any other reason deemed appropriate by the board.

(3) If the board determines that an investigation is necessary, then the board will conduct an investigation for the purpose of deciding whether to take disciplinary action.

If the board decides to take disciplinary action against a licensee, Mich Admin Code, R 432.11108(2) provides that the board may suspend or remove the licensee's license, impose a civil penalty, and take "any other action deemed necessary by the board to ensure compliance with the act or these rules."

The Administrative Procedures Act, MCL 24.201 *et seq.*, provides that a party "aggrieved by a final decision or order in a contested case" of a state agency may appeal that decision in the circuit court. MCL 24.301. Similarly, the Revised Judicature Act, MCL 600.101 *et seq.*, provides for judicial review of "any order, decision, or opinion of any state board," through appeal to the circuit court. MCL 600.631.

When the Legislature expresses an intent to make the jurisdiction of an administrative agency exclusive, the courts are not permitted to exercise jurisdiction over that same area. *Citizens for Common Sense*, 243 Mich App at 50. This Court has held that by enacting the MGCRA, the Legislature intended to vest the Board with exclusive jurisdiction "over all matters relating in any way to the licensing, regulating, monitoring, and control of the non-Indian casino industry," despite the term "exclusive jurisdiction" not appearing in the Act. *Papas v Gaming Control Bd*, 257 Mich App 647, 657-659; 669 NW2d 326 (2003). This Court also has determined that, as a result of the Board's exclusive jurisdiction, a litigant may not pursue common-law claims inconsistent with the MGCRA. *Kraft v Detroit Entertainment, LLC*, 261 Mich App 534, 543-551; 683 NW2d 200 (2004); MCL 432.203(3) (Any other law inconsistent with the act does not apply to casino gaming as provided in the act).

In *Kraft*, this Court described the "expansive and exclusive authority" of the Board to "regulate all aspects of casino gambling," observing that the Board's rules set forth the procedure for a patron to file a complaint against a casino licensee. *Kraft*, 261 Mich App at 549-551, citing Mich Admin Code, R 432.11501 to 432.11503. Under the rules, the Board decides whether a patron dispute requires investigation, Mich Admin Code, R 432.11503(1), and whether to take disciplinary action after completing an investigation, Mich Admin Code R 432.11503(3). In the event that disciplinary action is required, the Board may revoke casino licenses and impose fines for fraudulent conduct. *Kraft*, 261 Mich App at 551, citing MCL 432.204a(1).

In this case, defendant contends that the Board had exclusive jurisdiction over plaintiff's claim, and further, that plaintiff was required to exhaust her

administrative remedies before seeking relief from the courts. The doctrine of exhaustion of administrative remedies requires that, when an administrative remedy exists, a party must exhaust the administrative relief process before bringing the claim to court. *Connell v Lima Twp*, 336 Mich App 263, 282; 970 NW2d 354 (2021). The requirement of exhaustion of administrative remedies is intended to avoid premature court adjudication or review of administrative action. See *Paragon Props Co v City of Novi*, 452 Mich 568, 579 n 12; 550 NW2d 772 (1996). Here, plaintiff submitted a patron dispute form to the Board, which responded by letter stating that plaintiff's claim was "beyond the powers of the Board to address" because the matters were not "subject to regulation" under the MGCRA or attendant rules, and the Board lacked authority to "award any money or other relief directly to a patron." Defendant contends that plaintiff failed to exhaust her administrative remedies by appealing the decision of the Board to the circuit court.

The response of the Board in this case mirrors that of the Board in *Davis v BetMGM, LLC*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363116). In *Davis*, the plaintiff alleged that an online gaming website operated by the defendant informed her she had won, but the defendant thereafter would not pay her the winnings. The plaintiff filed suit against the defendant alleging fraud, conversion, and breach of contract. In *Davis*, the Board had determined that it lacked the authority to resolve her dispute. *Id*. at ___; slip op at 2. This Court determined that the Lawful Internet Gaming Act (LIGA), MCL 432.301 *et seq*., provided the exclusive remedy for plaintiff's common-law claims that were inconsistent with LIGA. *Davis*, ___ Mich App at ___; slip op at 6. This Court reasoned that the LIGA contains a provision similar to that of the MGCRA discussed in *Kraft*, that "[a] law that is inconsistent with this act does not apply to internet gaming as provided for by this act," MCL 432.304(3). *Id*. This Court observed that the plaintiff's claims were like those in *Kraft*, because they alleged, in part, fraud and deceit, and they therefore "conflict with the MGCB's authority under LIGA to regulate all aspects of internet gaming." *Id*. at 7. This Court in *Davis* stated that "it is clear that the MGCB had the power under LIGA to investigate disputes such as plaintiff's, to determine whether a violation of LIGA or the rules promulgated under it had occurred, and to require corrective actions from an internet gaming provider." *Id*.

In this case, defendant contends that plaintiff's claim for unpaid winnings similarly was preempted because the Board had exclusive jurisdiction and plaintiff failed to exhaust the administrative remedy by direct appeal of the Board's decision to the circuit court. Published opinions of this Court issued on or after November 1, 1990, are precedentially binding, MCR 7.215(J)(1). In light of this Court's holdings in *Kraft* and *Papas*, as well as this Court's analogous decision in *Davis*, we agree that the district court lacked subject matter jurisdiction, despite the Board's letter advising plaintiff that it did not have authority to resolve her claim. Plaintiff's complaint alleged unjust enrichment and fraudulent misrepresentation, claims preempted by the MGCRA's grant of exclusive jurisdiction to the Board regarding patron disputes. See *Kraft*, 261 Mich App at 551; see also *Davis*, ___

Mich App at ___; slip op at 7. When the Legislature has provided exclusive jurisdiction to a state agency, as in this case, "courts must decline to exercise jurisdiction until all administrative proceedings are complete." *Papas*, 257 Mich App at 657.

We note with interest the observation in *Davis*, ___ Mich App at ___ (FEENEY, J. dissenting), that under the Lawful Internet Gaming Act (LIGA), MCL 432.301 *et seq.*, the Board apparently has neither authority nor an obligation to resolve a patron's claim that he or she is owed winnings that are being wrongfully withheld by a licensee. Discussing § 9 of the LIGA, MCL 432.309, the dissenting opinion in *Davis* observed:

> The statute provides an exhaustive list [of the Board's authority]. But a review of that list reflects extensive authority over the licensing of on-line casinos, an establishment of rules by which those licenses are obtained (and perhaps revoked), casino operations, and procedures for sanctioning on-line casinos that violate the statute and rules. What is not found in the list is the authority, much less the obligation, to resolve individual patron disputes such as that presented here.
>
> . . . [T]he Gaming Board has the authority and responsibility to investigate defendant over this incident and determine what, if any, licensing sanctions are appropriate. But plaintiff's suit does not seek licensing sanctions against defendant; plaintiff seeks payment of the money that defendant's gaming platform told her that she had won. [*Davis*, ___ Mich App at ___; slip op at 4-5 (FEENEY, J, dissenting) (footnotes omitted).]

As in *Davis*, plaintiff in this case seeks payment from defendant of amounts allegedly won from a defendant licensee. The Board determined that it has no authority to resolve plaintiff's claim for payment; a reading of the MGCRA supports the conclusion that although the Board has exclusive jurisdiction of a patron dispute, the Legislature has given the Board no authority to resolve a dispute by ordering a casino to pay a patron. As in *Davis*, plaintiff appears to be left without a forum in which to pursue her claimed winnings from defendant. When the Legislature has declined to address a concern by including a provision within a statute, however, courts are not empowered to insert a provision into the statute to address the concern. *LeFever v Matthews*, 336 Mich App 651, 679; 971 NW2d 672 (2021). As a result, whether and how a patron might pursue a claim for winnings from a casino is a question left to the authority of the Legislature. [*Jewell*, unpub op at 2-6.]

Following this Court's decision in this case, our Supreme Court reversed the judgment of this Court in *Davis*, holding that our Legislature did not intend the LIGA to abrogate the common-law claims of a patron engaged in internet gaming and further, that the patron's common-law

claims in that case were not inconsistent with the LIGA nor with the statutory and regulatory authority of the Board. In *Davis*, our Supreme Court stated, in relevant part:

> The LIGA assigns to the MGCB specific powers and duties defined in the act "and all other powers necessary to enable [the MGCB] to fully and effectively execute [the LIGA] to administer, regulate, and enforce the system of internet gaming established under [the LIGA]."
>
> * * *
>
> The proper focus is whether the MGCB's exercise of authority, as permitted by the LIGA, results in a licensee obtaining immunities and rights derived from the MGCB's actions. Under this scheme, a disgruntled patron may not bring an action against a licensee if the MGCB has exercised its statutory authority to render a decision that is incompatible with those claims. Here, however, the MGCB cannot make a decision that is incompatible with plaintiff's common-law claims, and defendant has not shown that the MGCB is obligated to take action that could render plaintiff's claims incompatible with the LIGA. [*Davis*, ___ Mich at ___; slip op at 3-4.]

As in this case, the defendant in *Davis* argued that the trial court lacked subject matter jurisdiction over the dispute. The Supreme Court in *Davis* noted that under Michigan's 1963 Constitution, Article 3, § 7, the common law "not repugnant" to the Constitution remains in force in Michigan until it is "changed, amended or repealed," and "prevails except as abrogated by the Constitution, the Legislature, or this Court." *Davis*, ___ Mich at ___; slip op at 8 (quotation marks and citations omitted). The Supreme Court in *Davis* then explained that the properly framed question in that case was "whether the Legislature intended to abrogate the common-law claims at issue here when enacting the LIGA." *Id*. at ___; slip op at 18. The Court emphasized that although the Legislature has authority to alter or abrogate the common law,

> [T]he mere existence of a statute does not mean that the Legislature has exercised this authority. We presume that the Legislature "know[s] of the existence of the common law when it acts." Therefore, we have stated that "[w]e will not lightly presume that the Legislature has abrogated the common law" and that "the Legislature should speak in no uncertain terms when it exercises its authority to modify the common law." As with other issues of statutory interpretation, the overriding question is whether the Legislature intended to abrogate the common law. [*Id*. at ___; slip op at 18, quoting *Murphy v Inman*, 509 Mich 132, 153; 983 NW2d 354 (2022).]

This case involves not the LIGA, but rather the MGCRA, which regulates casino gambling in Detroit. The inquiry in this case is, however, similar to the one the Supreme Court answered in *Davis*. Here we must ask whether the Legislature intended to abrogate the common-law claims at issue in this case when it enacted the MGCRA. As did our Supreme Court in *Davis* when considering the LIGA, we note that merely because the MGCRA is comprehensive legislation does not necessarily lead to the conclusion that common-law claims are inconsistent with, and therefore supplanted by, the MGCRA.

When this case was before this Court previously, we relied in part on this Court's earlier decision in *Kraft*. In that case we determined that the MGCRA had given the Board exclusive jurisdiction within that statutory scheme, and as a result a litigant could not pursue common-law claims inconsistent with the MGCRA. *Kraft*, 261 Mich App at 543-551; MCL 432.203(3). As discussed, this Court in *Kraft* described the "expansive and exclusive authority" of the Board to "regulate all aspects of casino gambling," and observed that the Board's rules set forth the procedure for a patron to file a complaint against a casino licensee. *Kraft*, 261 Mich App at 549-551, citing Mich Admin Code, R 432.11501 to 432.11503. As we stated previously, under the administrative rules the Board decides whether a patron dispute requires investigation, Mich Admin Code, R 432.11503(1), and whether to take disciplinary action after completing an investigation, Mich Admin Code R 432.11503(3). When disciplinary action is required, the Board may revoke casino licenses and impose fines for fraudulent conduct. *Kraft*, 261 Mich App at 551, citing MCL 432.204a(1). However, our Supreme Court in *Davis* explained:

> [I]n *Kraft*, the MGCB exercised its authority and approved the operation of two specific games. The plaintiff brought a class action, claiming that the game fraudulently induced consumers to play the games by misrepresenting the playing odds, in violation of Michigan's common law. The MGCB's decision to approve operation of the games in that case exempted the licensee under the MGCRA as to the particular common-law claim. Imposing liability on the *Kraft* defendant "would give rise to conflicting standards for gaming device manufacturers and casino licensees because a casino licensee could use a gaming device that had been vigorously tested and approved by the MGCB only to have a different standard imposed though the medium of the common law. In other words, the plaintiffs' claims were not compatible and were therefore "inconsistent" with the MGCRA. [*Davis*, ___ Mich at ___; slip op at 22 (footnotes omitted).]

Upon reconsideration in this case, we conclude that plaintiff's pursuit of her common-law claims in the district court was not "inconsistent" with the comprehensive statutory scheme of the MGCRA. This is particularly true because, as in *Davis*, the Board in this case "expressly disclaimed any role in resolving the merits of disputes" between patrons and casinos. *Id*. at ___; slip op at 23. As with the Supreme Court's review of the LIGA in *Davis*, our review of the MGCRA does not reveal a grant to the Board of either the authority or the obligation to resolve individual patron disputes such as the one plaintiff presented in this case. We do not perceive an intention by the Legislature to abrogate a patron's common-law claims that are not inconsistent with the MGCRA. See *id*. at ___; slip op at 23. In addition, having concluded that the Board lacked the authority to resolve plaintiff's common-law claims and that plaintiff's common-law claims in this case were not abrogated by nor inconsistent with the MGCRA, we reject defendant's argument that plaintiff in this case was obligated to exhaust administrative remedies before pursuing her common-law claims in the district court.

In light of our Supreme Court's reversal of this Court's decision in *Davis* and its clarification of this Court's decision in *Kraft*, we conclude that the Legislature did not intend to abrogate the common-law claims of plaintiff in this case, which are not inconsistent with the MGCRA. We therefore affirm the judgment of the circuit court, which denied defendant's application for leave to appeal the order of the district court that denied defendant summary disposition of plaintiff's claims.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray

K.F. Kelly, J., did not participate.