*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRUE CARE PHYSICAL THERAPY, PLLC,

        Plaintiff-Appellee,

v

AUTO CLUB GROUP INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
May 25, 2023
9:15 a.m.

No. 362094
Oakland Circuit Court
LC No. 2021-189445-NF

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

HOOD, J.

Defendant Auto Club Group Insurance Company (Auto Club), appeals by right a trial court order denying its motion for summary disposition and awarding no-fault benefits, costs, and attorney fees to plaintiff True Care Physical Therapy, PLLC (True Care). The trial court concluded that the no-fault act, MCL 500.3101 *et seq*., did not require True Care to administratively appeal Auto Club's utilization review through the procedures in MCL 500.3157a and Mich Admin Code, R 500.65. We agree and affirm.

## I. BACKGROUND

Rozarta Vukaj suffered multiple injuries including to her neck, back, and right shoulder in a 2018 motor vehicle accident. Ten months after the accident, she began a period of physical therapy with True Care that lasted approximately two years. Her physical therapy sessions with True Care included hot or cold packs, therapeutic exercises, manual therapy, and electrical stimulation for treatment of Vukaj's neck, lower back and shoulder pain, with each visit costing between $655 and $925.

Vukaj had a no-fault insurance policy with Auto Club. The policy entitled her to personal-protection-insurance (PIP) benefits. Vukaj assigned her rights to those benefits to True Care. Auto Club paid True Care approximately $57,000 over two years for Vukaj's treatment.

Auto Club stopped paying for Vukaj's treatments with True Care in September 2021, following a utilization review that it conducted.[1] The utilization review concluded that True Care's treatment exceeded the American College of Occupational and Environmental Medicine (ACOEM) guidelines' recommendations for the frequency and duration of treatment for injuries like Vukaj's. According to the utilization review, the ACOEM recommended a maximum of 10 visits over 8 weeks. By mid-June 2021, Vukaj had completed more than 137 visits with True Care over a period of more than 2 years. Auto Club issued an explanation of benefits (EOB) denying True Care payment based on its utilization review.

True Care nonetheless continued to treat Vukaj and to submit charges to Auto Club for the same services. In response, Auto Club conducted three subsequent utilization reviews. Each of these utilization reviews reached the same conclusion as the first, denying payment on overutilization grounds.

The explanations of benefits (EOBs) reflecting the utilization review provided information on how to appeal the Auto Club's determination to the Department of Insurance and Financial Services (DIFS).[2] They stated, "[a]n insurer's denial of a provider's bill on the basis that the provider overutilized or otherwise rendered or ordered inappropriate treatment . . . may be appealed to the Department of Insurance and Financial Services pursuant to Utilization Review Rule 500.65." True Care did not appeal the utilization review to the DIFS.

Instead, in August 2021, True Care filed a complaint in the circuit court claiming that Auto Club breached its contractual obligation to provide no-fault insurance benefits by refusing to pay for reasonable and necessary medical services that True Care provided to Vukaj. True Care sought more than $40,000 in additional payments.

Auto Club moved for summary disposition under MCR 2.116(C)(4), (C)(8), and (C)(10), raising three related bases. First, under MCR 2.116(C)(4), it argued that the trial court lacked subject-matter jurisdiction because True Care elected not to appeal the utilization review to the DIFS; therefore, Auto Club contended, it failed to exhaust its administrative remedies before suit. Second, it maintained that summary disposition was appropriate under MCR 2.116(C)(10) because True Care never challenged the factual determinations in the utilization review by appealing to the DIFS; therefore, according to Auto Club, there was no genuine dispute of material fact as to whether the benefits were overdue or "reasonably in dispute." Finally, by extension, Auto Club argued that summary disposition was warranted under MCR 2.116(C)(8), because True Care's lack of demonstrable injury (related to its failure to appeal the factual determinations in the utilization review) meant it lacked standing to sue. All of Auto Club's arguments stemmed from

---

[1] A utilization review is the insurer's initial evaluation of the appropriateness in terms of both the level and quality of treatment provided under the no-fault act based on medically accepted standards. See MCL 500.3157a(6).

[2] The DIFS is a principal department in the Michigan executive branch responsible for the regulation of the insurance and financial services industries in Michigan, including regulation of banks, credit unions, and insurance companies, agents, and agencies. Department of Insurance and Financial Services, *About* <https://www.michigan.gov/difs/about> (accessed May 17, 2023).

its core position that MCL 500.3157a of the no-fault act and Rule 500.65 of the Michigan Administrative Code required True Care to appeal to the DIFS before filing suit.

True Care responded, arguing that it had a valid enforceable assignment of PIP benefits from Vukaj, and that MCL 500.3112 of the no-fault act explicitly granted it the right to pursue a direct cause of action against the insurer in the trial court. An administrative appeal to the DIFS was not mandatory, True Care insisted, and that if it were, that rule would conflict with other portions of the no-fault act, including MCL 500.3112, 500.3142, and 500.3145.

Without a hearing, the trial court issued an opinion and order denying the motion for summary disposition, ruling that MCL 500.3112 specifically granted True Care a direct and independent statutory cause of action against Auto Club, and that the cause of action was without preconditions. The court first determined that on its face, MCL 500.3112 did not require an administrative appeal as a precondition to suit. Second, both the Legislature, under MCL 500.3157a(5), and the DIFS, under Rule 500.64(3) and Rule 500.65(1), used the discretionary term "may" regarding an appeal, not "must" or "shall," indicating that an appeal to the DIFS before suit is discretionary. Third, the court observed that requiring an administrative appeal under MCL 500.3157a would effectively shorten the timeline applicable to suits under MCL 500.3112 as provided in MCL 500.3145 (the so-called "one-year back rule"). The trial court found that the conflict between MCL 500.3157a(5) and MCL 500.3112 created an unresolved question of legislative intent between the statutes and related administrative rules. It resolved the conflict in favor of the direct independent cause of action provided in MCL 500.3112.

The trial court entered a final judgment denying Auto Club's motion for summary disposition, awarding True Care $10,813.57 for all no-fault benefits, interest, costs, and attorney fees incurred to date. It stayed execution and enforcement of the judgment pending this appeal.

## II. STANDARDS OF REVIEW

Auto Club moved for summary disposition under MCR 2.116(C)(4), (C)(8), and (C)(10).[3] But the crux of its argument before the trial court, the ostensible basis of the trial court's opinion, and Auto Club's argument before this Court, is that the trial court lacked subject-matter jurisdiction. "This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Wells Fargo Rail Corp v State of Michigan*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 3 (quotation marks and citation omitted).

---

[3] Auto Club argued that summary disposition was appropriate under MCR 2.116(C)(4) because the trial court lacked subject-matter jurisdiction, since True Care did not exhaust administrative remedies, and that MCR 2.116(C)(8) applied because True Care lacked standing. Finally, Auto Club argued for summary disposition under MCR 2.116(C)(10) because True Care's decision not to appeal the utilization review findings meant there was no genuine issue of material fact regarding the benefits being "overdue." Notably, Auto Club did not directly challenge the reasonableness or necessity of the charges under MCL 500.3107(1) in its motion for summary disposition.

-3-

"Summary disposition under MCR 2.116(C)(4) is proper when a 'court lacks jurisdiction of the subject matter.' " *Wells Fargo Rail Corp*, ___ Mich App at ___; slip op at 3, quoting MCR 2.116(C)(4). When a plaintiff has failed to exhaust its administrative remedies, summary disposition pursuant to MCR 2.116(C)(4) is proper. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000). "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Wells Fargo Rail*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted).

"The issue of subject-matter jurisdiction presented in this case involves questions of statutory interpretation, which we review de novo." *Wells Fargo Rail*, ___ Mich App at ___; slip op at 3 (citation omitted).

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Yopek v Brighton Airport Ass'n, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359065); slip op at 4-5 (quotation marks and citations omitted).]

## III. LAW AND ANALYSIS

The trial court correctly denied Auto Club's motion for summary disposition because it had subject-matter jurisdiction over True Care's claim.[4] At its core, a utilization review is an "initial evaluation" of the appropriateness of the level and quality of treatment. See MCL 500.3157a(6). The cause of action that the Legislature provided in MCL 500.3112 is not preconditioned on the permissive administrative appeal of that initial evaluation. The plain language of the no-fault act demonstrates that the Legislature intended alternate pathways for determining whether care was appropriate.

### A. NO-FAULT REFORMS OF 2019, MCL 500.3157a, and MCL 500.3112

---

[4] As stated above, Auto Club raised three interrelated arguments before the trial court. But the primary argument before the trial court and this Court, and the issue that resolves this case is whether the circuit court had subject-matter jurisdiction. To the extent the trial court's ruling was under (C)(8) or (C)(10), Auto Club has not made a meaningful argument in support of its position, so we need not address it. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

The no-fault act is Michigan's statutory framework for insurance coverage, compensation, and dispute resolution related to motor vehicle accidents. See MCL 500.3101 *et seq*. Its goals are to provide individuals injured in motor vehicle accidents with assured, adequate, and prompt recovery, minimize administrative delays and factual disputes, and moderate the costs to the individual and to the system. *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 479-480; 960 NW2d 186 (2020). In June 2019, our Legislature passed comprehensive reforms to the no-fault act. Two of those reforms are at issue in this case: (1) amendments that allow insurers to conduct a utilization review, see MCL 500.3157a; and (2) amendments that provide healthcare providers with a direct cause of action against insurers for the collection of PIP benefits, see MCL 500.3112.

Primarily at issue is MCL 500.3157a, which allows utilization reviews. It defines a "utilization review" as "the initial evaluation by an insurer or the association created under section 3104 of the appropriateness in terms of both the level and the quality of treatment, products, services, or accommodations provided . . . based on medically accepted standards." MCL 500.3157a(6). It also instructs that healthcare providers, by providing treatment to injured persons for accidental bodily injury covered by PIP insurance after July 1, 2020, must agree to submit necessary records and information related to that treatment for utilization review and comply with any decision of the DIFS related to that utilization review. See MCL 500.3157a(1)(a) and (b). Critically, MCL 500.3157a provides a mechanism for appealing an insurer's conclusions in a utilization review to the DIFS. See MCL 500.3157a(5). In its relevant parts, it states:

> If an insurer or the association created under section 3104 determines that a physician, hospital, clinic, or other person overutilized or otherwise rendered or ordered inappropriate treatment, products, services, or accommodations, or that the cost of the treatment, products, services, or accommodations was inappropriate under this chapter, the physician, hospital, clinic, or other person *may* appeal the determination to the department under the procedures provided under subsection (3). [MCL 500.3157a(5) (emphasis added).]

MCL 500.3157a also requires the DIFS to promulgate rules for a review under the Administrative Procedures Act (APA), MCL 24.201 *et seq*., and to provide an appeals process for that review. See MCL 500.3157a(3)(a) and (b). The DIFS promulgated rules related to utilization review appeals that are found in Mich Admin Code, R 500.61 *et seq*. These rules require insurers to create utilization review programs, see Rule 500.66(1), specify the procedures for such programs, see Rule 500.64(1)(a) to (e), and provide for appeals and procedures for those appeals, see Rule 500.64(3).

Rule 500.64(3) describes as follows the procedure for a healthcare provider appealing an insurer's utilization review determination:

> An insurer's or the association's denial of a provider's bill on the basis that the provider overutilized or otherwise rendered or ordered inappropriate treatment, training, products, services, or accommodations, or that the cost of the treatment, training, products, services, or accommodations was inappropriate under chapter 31 of the act, MCL 500.3101 to 500.3179, is a determination from which a provider *may* appeal to the department under R 500.65, regardless of whether the insurer has

requested a written explanation from the provider under this rule. [Rule 500.64(3) (emphasis added).]

Regarding the time for a healthcare provider to appeal, Rule 500.65(1) states: "A provider *may* appeal a determination made by an insurer or the association. The appeal *must* be filed within 90 days of the date of the disputed determination and must be made on a form prescribed by the department." Rule 500.65(1) (Emphasis added.) Rule 500.65(7) declares that "[a] decision issued by the department under these rules is subject to judicial review as provided in section 244(1) of the act, MCL 500.244(1)."

In short, under MCL 500.3157a, Rule 500.64, and Rule 500.65, a healthcare provider *may* appeal a utilization review. If a provider chooses to appeal a utilization review, it must comply with the procedural requirements of Rule 500.61, *et seq*. This includes the requirement that the provider file the appeal within 90 days of the disputed determination. See Rule 500.65(1).

Here, MCL 500.3157a is relevant only to the extent it potentially conflicts with MCL 500.3112 which grants healthcare providers a direct cause of action for the collection of PIP benefits against insurers:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his or her death, to or for the benefit of his or her dependents. A health care provider listed in section 3157 may make a claim and assert a direct cause of action against an insurer, or under the assigned claims plan under sections 3171 to 3175, to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person. [MCL 500.3112 (footnotes omitted).]

The terms of MCL 500.3112 do not restrict such claims to those that have been submitted to an administrative utilization review. See MCL 500.3112. Rather, the only restriction contained in Section 3112 is that the benefits must be "overdue." See *id*. In MCL 500.3142(2), the Legislature explained that such PIP benefits are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained."

## B. THE PLAIN LANGUAGE OF THE NO-FAULT ACT INDICATES THAT THE LEGISLATURE INTENDED THAT APPEAL UNDER MCL 500.3157A(5) AND RELATED REGULATIONS IS PERMISSIVE, NOT MANDATORY

Read together, the unambiguous language of MCL 500.3157a(5), its related regulations, and MCL 500.3112 compel a conclusion that the administrative appeal provided under MCL 500.3157(a)(5) and Rule 500.65 is permissive, not mandatory. The text of the no-fault act plainly does not require administrative appeal of a utilization review as a precondition to suit under MCL 500.3112. The trial court correctly reached this conclusion in finding that it had subject-matter jurisdiction over True Care's claims based on the plain language of the operative statutes.

Our primary goal in construing a statute is "to determine and apply the intent of the Legislature," which we do by "examin[ing] the specific language of the statute." *Yopek*, ___ Mich App at ___; slip op at 4. We have held:

> If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Under the plain-meaning rule, courts must give the ordinary and accepted meaning to the mandatory word "shall" and the permissive word "may" unless to do so would frustrate the legislative intent as evidenced by other statutory language or by reading the statute as a whole. [*Atchison v Atchison*, 256 Mich App 531, 535; 664 NW2d 249 (2003) (citations omitted).]

MCL 500.3157a, Rule 500.65, or MCL 500.3112 do not instruct that an appeal of a utilization review determination to the DIFS is a mandatory or an exclusive method of challenging an insurer's initial decision to withhold PIP benefits. As stated above, MCL 500.3157a(5) provides that if an insurer's utilization review determines that a provider ordered inappropriate treatment, the provider "may appeal the determination" to the DIFS. See MCL 500.3157a(5). The subsection uses the permissive "may," instead of "shall" or "must." See *id*. Likewise, Rule 500.65 provides, "A provider *may* appeal a determination made by an insurer or the association." (Emphasis added.) The ordinary meaning of these words suggests that both the Legislature and the DIFS intended subsection 3157a(5) and Rule 500.65 to provide an alternative and discretionary way to appeal a utilization review determination to the DIFS, not an exclusive or mandatory method for challenging denial of benefits. See *Atchison*, 256 Mich App at 535.

Analogously, in *Apsey v Mem Hosp*, 477 Mich 120; 730 NW2d 695 (2007), our Supreme Court considered whether a newer statute governing the authentication of out-of-state affidavits conflicted with a prior statute containing more formal requirements. The statutes' authentication requirements ostensibly conflicted. *Id*. at 128-129. But the Supreme Court held that the two statutes could be harmonized by viewing them as alternative pathways to the same goal. *Id*. at 130-134. That the two pathways were entirely different did not matter, the Court explained, because

> [t]he Legislature need not repeal every law in a given area before it enacts new laws that it intends to operate in addition to their preexisting counterparts. The Legislature has the power to enact laws to function and interact as it sees fit. And when it does so, this Court is bound to honor its intent. [*Id*. at 132.]

By enacting two notarization options, the Supreme Court explained, the Legislature "made its intent clear [that] it wished to create an additional method of authentication. We must respect this decision." *Id*. at 132-133. In *Apsey*, as here, the newer method for authentication was less likely to be used because it was more "rigorous." *Id*. at 133. But the old one "still has meaning," the Court held, and was "not rendered nugatory." *Id*.

Nor are we persuaded by Auto Club's argument that "may" as used here means "shall" or "must." Courts must give the ordinary and accepted meaning to the permissive word "may" and the mandatory words "shall" or "must" unless doing so "would frustrate the legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Atchison*, 256 Mich App at 535. Adopting Auto Club's position that "may" means "must" would frustrate, rather than fulfill, the 2019 reforms.

-7-

As the trial court correctly observed, reading the permissive language in MCL 500.3157a(5) and Rule 500.65 as mandatory or exclusive conflicts with the Legislature's intent as expressed in other parts of the no-fault act. We discern two ways in which Auto Club's reading would frustrate, rather than fulfill, legislative intent.

First, reading the appeal under MCL 500.3157a and Rule 500.65(1) as mandatory instead of permissive imposes an additional requirement for actions permitted under MCL 500.3112. MCL 500.3112 permits a direct cause of action by a provider. The only restriction, aside from the limitations period, is that PIP benefits must be "overdue." See MCL 500.3112. Elsewhere, the no-fault act explains that PIP benefits are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). While the Legislature explicitly preconditioned the cause of action under MCL 500.3112 on PIP benefits being "overdue," it did not predicate a claim on the results of a utilization review or administrative appeal to the DIFS. MCL 500.3112 and MCL 500.3142 do not mention utilization review or administrative review at all. Auto Club's preferred interpretation of MCL 500.3157a(5) would modify the cause of action under MCL 500.3112 by adding a requirement that the Legislature did not endorse.

Second, we are not persuaded that "may" means "must." That interpretation shortens the limitations period for actions under § 3112 and carries the additional danger of allowing a regulation to overwrite a statute. Because Rule 500.65(1) provides that a provider who appeals a utilization review to the DIFS "must" file an appeal "within 90 days of the date of the disputed determination," a mandatory appeal process would abrogate rights provided in MCL 500.3112 by shortening the period of limitations. Aside from the requirement that PIP benefits be "overdue" before pursuing a cause of action under MCL 500.3112, the only restriction the Legislature imposed is the statute of limitations, MCL 500.3145(1), which provides a one-year limitations period for first-party claims:

> An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury may not be commenced later than 1 year after the date of the accident that caused the injury unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. [MCL 500.3145(1).]

A litigant pursuing a cause of action for benefits, whether brought under § 3112 or otherwise, must commence the action within one year of the accident or unpaid service. But Rule 500.65(1) requires that appeals of utilization review decisions to the DIFS must be filed within 90 days of an adverse utilization review determination. Auto Club's reading of a mandatory appeal to the DIFS under subsection 3157a(5) would create a conflict between the shorter 90-day timeframe for appealing a utilization review decision under Rule 500.65(1), and the one-year statute of limitations provided in MCL 500.3145(1). Neither subsection 3157a(5), nor Rule 500.64(1), contain a tolling provision related to the period of limitations in MCL 500.3145(1). Likewise, the one-year-back rule does not contain a tolling provision for administrative appeals of utilization review decisions. See MCL 500.3145. Abandoning the ordinary meaning of "may" under MCL 500.3157a(5), therefore, not only adds an unwritten precondition to § 3112 as

described above, but shortens the period of limitations in subsection 3145(1) as it applies to § 3112. This, on its own, is enough reason to use the ordinary dictionary definition of "may."

But Auto Club's argument is particularly troubling because it is the regulation, Rule 500.65(1), not the statute, MCL 500.3157a(5), that imposes the 90-day timeframe that conflicts with the period of limitation for MCL 500.3112. Compare Rule 500.65(1) with MCL 500.3145(1). When an agency adopts a rule in accordance with the APA, it is considered a "legislative rule" and has the force and effect of law. *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 161; 975 NW2d 52 (2021). But "although the rulemaking power of an administrative agency has been described as quasi-legislative, an agency is not empowered to change law enacted by the Legislature." *Id*., citing *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 47; 869 NW2d 810 (2015), and *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 98; 754 NW2d 259 (2008). "When an administrative rule conflicts with a statute, the statute controls," and courts may invalidate an agency's legislative rule. *Brightmoore Gardens, LLC*, 337 Mich App at 161 (citations omitted). See also *Slis v Michigan*, 332 Mich App 312, 346; 956 NW2d 569 (2020) (holding that a court may determine an agency's legislative rule is invalid when the rule goes beyond the parameters of the enabling statute, when the rule does not comply with the legislative intent underlying the enabling statute, or when the rule is arbitrary and capricious).

Here, no such determination is necessary. Interpreting § 3157 and Rule 500.65 according to the plain language and ordinary meaning of the word "may" avoids any conflict. Before an administrative rule may take effect, the agency promulgating the rule must submit a regulator impact statement and cost-benefit analysis. See MCL 24.245(3) and (4). The DIFS issued a statement declaring that it promulgated the utilization review rules in a manner "to avoid conflict and overlap with relevant provisions of the Insurance Code; specifically, provisions related to health care providers' right to file suit for payment of benefits *and timelines for doing so*." (Emphasis added.) While courts may not give an agency interpretation "unfettered deference," an agency's interpretation of a statute is entitled to "respectful consideration" to the extent its interpretation is persuasive. See *Rovas*, 482 Mich at 93. See also *id*. at 108 (noting that " '[r]espectful consideration' is not equivalent to any normative understanding of 'deference' as the latter term is commonly used in appellate decisions."). The trial court correctly reviewed the DIFS's statement as persuasive. We are similarly persuaded. The DIFS's statement is not dispositive; it is just an additional indicator. The agency interpretation is consistent with, and undergirded by, the plain reading of the statutes and regulations, apparent legislative intent, and an effort to avoid creating a conflict between Rule 500.65 and the statute.

The trial court correctly identified these issues. And to avoid creating a conflict between statutory provisions where none exists, it applied the standard definition of "may." Far from the trial court and True Care finding a conflict where none exists, as Auto Club argues, relying on the plain language of MCL 500.3157a avoids a conflict. Because the administrative appeal under MCL 500.3157a is permissive, the trial court had subject-matter jurisdiction over True Care's claims.

### C. ADMINISTRATIVE EXHAUSTION IS NOT REQUIRED FOR A PERMISSIVE (NONEXCLUSIVE) ADMINISTRATIVE APPEAL

Because the plain language of the operative statutes and regulations permit an administrative appeal rather than require it, True Care was not required to appeal the utilization

review decision to the DIFS to satisfy administrative exhaustion requirements. Cf. *Papas v Mich Gaming Control Bd*, 257 Mich App 647, 657; 669 NW2d 326 (2003). Generally, when an administrative scheme of relief exists, an individual must exhaust those remedies before the circuit court has jurisdiction. *In re Harper*, 302 Mich App 349, 356; 839 NW2d 44 (2013). "The doctrine of exhaustion of administrative remedies requires that where an administrative agency provides a remedy, a party must seek such relief before petitioning the court." *Cummins v Robinson Twp*, 283 Mich App 677, 691, 770 NW2d 421 (2009). See also *Connell v Lima Twp*, 336 Mich App 263, 282; 970 NW2d 354, 364 (2021). "[I]f the Legislature has expressed an intent to make an administrative tribunal's jurisdiction exclusive, then the circuit court cannot exercise jurisdiction over those same areas." *Citizens for Common Sense in Gov't*, 243 Mich App at 50. The phrase "exclusive jurisdiction" does not need to appear in a statute for a statute to vest jurisdiction exclusively in an administrative agency. *Papas*, 257 Mich App at 657. But the Legislature must use language that establishes its intent to grant the agency exclusive jurisdiction, thereby divesting courts of jurisdiction until all administrative proceedings are complete. *Id*.

Here, the Legislature did not use language expressing an intent to grant the DIFS exclusive jurisdiction. Indeed, the language it chose expresses an intent to give the circuit court jurisdiction. See MCL 500.3112. MCL 500.3112 explicitly affords providers with an unqualified cause of action that is not preconditioned on an administrative appeal. The administrative appeal provided by MCL 500.3157a uses permissive language, not mandatory language. Each of the cases on which Auto Club relies involve explicit or readily-discernable intent to give an agency exclusive jurisdiction. See *Papas*, 257 Mich App at 657. That is not the case here.

Auto Club also argues that True Care seeks to enforce purely statutory rights under the no-fault act without common law counterparts, rendering MCL 500.3157a the exclusive remedy. We are not persuaded. Auto Club relies on *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 78; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Mayor of Detroit*, 478 Mich 589; 734 NW2d 514 (2007), where our Supreme Court stated, "As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive, not cumulative." According to Auto Club, the Legislature intended the no-fault act to be a complete and self-contained solution to a problem not adequately addressed at common law, and thus the statute provides the exclusive remedy. Like Auto Club's other arguments, this argument fails to overcome the plain language of §§ 3157a and 3112. As stated, applying the ordinary meanings to the words used in these sections avoids conflict rather than creating it. The text, a cohesive reading of the statute as a whole, and the absence of clear legislative intent to the contrary leads us to a single conclusion: MCL 500.3157a is a nonexclusive grant of jurisdiction to the DIFS. True Care remained free to pursue its action in circuit court without exhausting this permissive administrative process.

Auto Club's argument is ultimately rooted in policy: that the practical effect of interpreting the statute according to its plain language will relegate it and Rule 500.65 to the realm of irrelevance. Auto Club's speculation is unsupported by evidence. And even if data could be gathered, the argument is more appropriately directed at the Legislature.

IV. CONCLUSION

For the reasons discussed above, we affirm the trial court's decision to deny summary disposition under MCR 2.116(C)(4). The trial court correctly concluded that the administrative appeal provided by MCL 500.3157a(5) and Rule 500.65 was permissive, not mandatory. True Care could file suit under MCL 500.3112 without exhausting the permissive, nonexclusive administrative appeal. The trial court, therefore, had subject-matter jurisdiction over True Care's claims.

We affirm.

/s/ Noah P. Hood
/s/ Elizabeth L. Gleicher
/s/ Allie Greenleaf Maldonado